No. 23-5950

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

IN RE NISSAN NORTH AMERICA, INC.
LITIGATION,

Appeal from the United States District Court
Middle District of Tennessee, Nashville Division
Hon. William L. Campbell, Jr.
Case Nos. 19-cv-843, 19-cv-854, and 22-cv-98

## BRIEF OF DEFENDANTS-APPELLANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.

Aaron D. Van Oort
John L. Rockenbach
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000

E. Paul Cauley, Jr.
S. Vance Wittie
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street
Suite 5400
Dallas, TX 75201
(469) 357-2503

Brigid M. Carpenter
BAKER DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37201
(615) 726-7341

*Counsel for Defendants-Appellants Nissan North America., Inc. and Nissan Motor Co., Ltd.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Defendants-Petitioners Nissan North America, Inc. and Nissan Motor Co., Ltd. make the following disclosures:

1.     Nissan North America Inc. is a wholly owned subsidiary of Nissan Motor Co., Ltd., a publicly traded corporation.

2.     Nissan Motor Co., Ltd. is a publicly held corporation.  Renault S.A. owns more than 10% of Nissan Motor Co., Ltd.

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................... iv

Statement Regarding Oral Argument............................................................ xiii

Jurisdictional Statement ................................................................................ 1

Statement of the Issues ................................................................................. 1

Introduction .................................................................................................. 1

Statement of the Case ................................................................................... 3

    A.    Automatic Emergency Braking (AEB) Technology Is Introduced to Help Drivers Prevent Crashes and Save Lives......................................... 4

    B.    Nissan Includes AEB Systems in the Class Vehicles and Updates Their Software as It Receives Real-World Performance Data. ................ 7

    C.    The Updates Successfully Reduce Unwanted Activations. ...................... 12

    D.    At Class Certification, Plaintiffs Offer Expert Opinions to Support Class-wide Defect and Damages Contention, Which Nissan Moves to Exclude.................................................................... 13

    E.    The District Court Declines to Rule on the Experts and Certifies Ten Statewide Classes. .......................................................................... 15

Summary of the Argument............................................................................. 17

Standard of Review ....................................................................................... 19

Argument....................................................................................................... 19

    A.    The District Court Failed to Perform the Required Rigorous Analysis to Identify and Balance Common and Individual Issues, Mistakenly Believing It Could Not Do So. ................................................. 20

    B.    The Required Analysis Shows Material Differences Within the Certified Classes on the Questions the District Court Erroneously Designated as "Common" Under Rule 23(a)(2)....................................... 23

        1.    The element of defect does not pose a common question because the AEB systems varied materially between vehicles and over time.................................................................... 23

2.      The element of knowledge does not pose a common question because Nissan's knowledge varied between vehicles and over time. .................................................. 27

3.      Whether Nissan's conduct violates "certain common law and statutory protections" does not pose a common question because it turns on each claim's separate elements........ 28

C.      A Rigorous Analysis Shows That Plaintiffs' Claims Raise Many Individual Questions That Will Predominate Over Any Common Questions........................................................................ 30

1.      The predominance analysis requires courts to identify all common and individual questions and assess which ones will predominate at trial............................................ 30

2.      All of Plaintiffs' claims contain predominating individual liability questions. ................................................ 32

a.      Breach of express warranty .................................... 32

b.      Breach of implied warranty .................................... 34

c.      Common law fraudulent concealment.................... 37

d.      State consumer protection statutes ....................... 41

e.      Unjust enrichment.................................................. 43

D.      As Part of the Required Rigorous Analysis, a District Court Must Resolve Rule 702 Challenges to Expert Testimony That Bear on Class Certification Before Applying Rule 23. ............................. 45

1.      Supreme Court precedent supports resolving challenges. ............ 46

2.      The text of the relevant rules supports resolving challenges........ 48

3.      The most well-reasoned decisions from other circuits support resolving challenges............................................ 50

Conclusion.................................................................................... 53

Certificate of Compliance ............................................................ 55

Certificate of Service ................................................................... 56

Designation of District Court Documents.................................... 57

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Allen v. Ollie's Bargain Outlet, Inc.*,
    37 F.4th 890 (3d Cir. 2022)...................................................................... 48

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) .................................................................... 21

*Am. Honda Motor Co. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) ...............................................................47, 49

*In re Am. Med. Sys.*,
    75 F.3d 1069 (6th Cir. 1996) .................................................................... 26

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................. 31

*American Honda Motor Co., Inc. v. Superior Court*,
    199 Cal. App. 4th 1367 (2011) ................................................................ 36

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ...................................................................... 31

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
    12 F.4th 81 (1st Cir. 2021) ...................................................................31, 44

*Barbara's Sales, Inc. v. Intel Corp.*,
    879 N.E.2d 910 (Ill. 2007) ....................................................................... 41

*Beck v. FCA US LLC*,
    273 F. Supp. 3d 735 (E.D. Mich. 2017) ................................................... 33

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) .................................................................... 35

*In re Blood Reagents Antitrust Litigation*,
    783 F.3d 183 (3d Cir. 2015)...................................................................... 50

*Brisson v. Ford Motor Co.*,
    349 Fed. Appx. 433 (11th Cir. 2009) ....................................................... 33

*Brown v. Electrolux Home Prods., Inc.,*
 817 F.3d 1225 (11th Cir. 2016) ................................................................ 19, 31

*In re Canon Cameras Litig.,*
 237 F.R.D. 357 (S.D.N.Y. 2006) ..................................................................... 36

*Carlson v. General Motors Corp.,*
 883 F.2d 287 (4th Cir. 1989) ......................................................................... 35

*In re Carpenter Co.,*
 2014 WL 12809636 (6th Cir. Sept. 29, 2014) ............................................ 45

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC,*
 310 F.R.D. 69 (S.D.N.Y. 2015) ...................................................................... 40

*Cavanaugh v. Subaru of America, Inc.,*
 2017 WL 2293124 (Conn. Super. May 4, 2017) ......................................... 36

*Cholakyan v. Mercedes-Benz USA, LLC,*
 281 F.R.D. 534 (C.D. Cal. 2012) .................................................................... 26

*In re Citizens Bank, N.A.,*
 15 F.4th 607 (3d Cir. 2021) ............................................................................ 32

*Clemens v. DaimlerChrysler Corp.,*
 534 F.3d 1017 (9th Cir. 2008) ....................................................................... 33

*Comcast Corp. v. Behrend,*
 569 U.S. 27 (2013) .................................................................................*passim*

*Coopers & Lybrand v. Livesay,*
 437 U.S. 463 (1978) ......................................................................................... 50

*Cromeans v. Morgan Keegan & Co., Inc.,*
 303 F.R.D. 543 (W.D. Mo. 2014) .................................................................. 38

*Davis v. Cintas Corp.,*
 717 F.3d 476 (6th Cir. 2013) ......................................................................... 19

*De Bouse v. Bayer,*
 922 N.E. 2d 309 (Ill. 2009) ............................................................................ 41

*Debbs v. Chrysler Corp.,*
 810 A.2d 137 (Pa. Super. 2002) .................................................................... 42

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ........................................................... 52

*Doll v. Ford Motor Co.*,
814 F. Supp. 2d 526 (D. Md. 2011) ................................................ 43

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010) (Ikuta, J., dissenting), *rev'd*, 564 U.S. 338 ................. 51

*Eddlemon v. Bradley Univ.*,
65 F.4th 335 (7th Cir. 2023) .......................................................... 23

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......................................................... 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ...................................................................... 21

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
334 F.R.D. 96 (E.D. Mich. 2019), *clarified on denial of reconsideration*, 340
F.R.D. 251 (E.D. Mich. 2022) ........................................................ 38

*In re Ford Motor Co.*,
86 F.4th 723 (6th Cir. 2023) ...................................................*passim*

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997) ........................................................ 26

*Ford Motor Co. v. Fairley*,
386 So. 2d 216 (Miss. 1981) .......................................................... 36

*Fox v. Saginaw Cnty.*,
67 F.4th 284 (6th Cir. 2023) ...................................................*passim*

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019) ........................................... 38

*Galitski v. Samsung Telecom. Am., LLC*,
2015 WL 5319802 (N.D. Tex. Sept. 11, 2015) ............................. 34

*Gariety v. Grant Thornton, LLP*,
368 F.3d 356 (10th Cir. 2023) ....................................................... 38

*Gen. Motors Corp. v. Brewer*,
966 S.W.2d 56 (Tex. 1998) ............................................................. 24

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) ....................................................................... 20

*Gene & Gene LLC v. Biopay LLC*,
541 F.3d 318 (5th Cir. 2008) ......................................................... 31

*In re General Motors LLC Ignition Switch Litig.*,
257 F. Supp.3d 372 (S.D.N.Y. 2017) ............................................ 36

*Ghirardo v. Antonioli*,
14 Cal. 4th 39 (Cal. 1996) .............................................................. 44

*Gonzalez v. Drew Indus., Inc.*,
750 F. Supp. 2d 1061 (C.D. Cal. 2007) .......................................... 33

*Gooch v. Life Investors Ins. Co of Am.*,
672 F.3d 402 (6th Cir. 2012) ......................................................... 20

*Grodzitsky v. American Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) ..................................................... 24, 49

*Hale v. Enerco Grp.*,
288 F.R.D. 139 (N.D. Ohio 2012) .................................................. 38

*Hall v. General Motors, LLC*,
2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) ............................. 43

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ......................................................... 45

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) .......................................... 39

*Holman v. Ali Indus., LLC*,
654 F. Supp. 3d 871 (W.D. Mo. 2023) ........................................... 35

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ........................................................... 42

*Iannacchino v. Ford Motor Co.*,
455 Mass. 623, 888 N.E. 2d 879 (2008) ..................................... 24, 42

*Ibe v. Jones,*
    836 F.3d 516 (5th Cir. 2016) ........................................................................ 38

*Johnson v. Harley-Davidson Motor Co. Grp. LLC,*
    285 F.R.D. 573 (E.D. Cal. 2012) .................................................................. 26

*In re Kondash,*
    No. 20-304, Dkt. 12 (6th Cir. Mar. 11, 2021) ............................................. 45

*In re Lamictal Direct Purchaser Antitrust Litig.,*
    957 F.3d 184 (3d Cir. 2020) ......................................................................... 46

*Lloyd v. Gen. Motors Corp.,*
    266 F.R.D. 98 (D. Md. 2010) ....................................................................... 26

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ....................................................................................... 51

*Lyngaas v. Ag,*
    992 F.3d 412 (6th Cir. 2021) ........................................................................ 45

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012) ......................................................................... 21

*Mars Steel Corp. v. Cont'l Bank N.A.,*
    880 F.2d 928 (7th Cir. 1989) (en banc) ....................................................... 48

*Marshall v. Hyundai Motor Am.,*
    334 F.R.D. 36 (S.D.N.Y. 2019) .................................................................... 42

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.,*
    422 F. Supp. 3d 194 (D.D.C. 2019) ............................................................. 43

*Mirkin v. Wasserman,*
    5 Cal.4th 1082 (1993) ................................................................................... 38

*In re MyFord Touch Consumer Litig.,*
    2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) ............................................. 27

*In re MyFord Touch Consumer Litig.,*
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ......................................................... 35

*Neale v. Volvo Cars of N. Am., LLC,*
    2021 WL 3013009 (D.N.J. July 15, 2021) .................................................... 34

*In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.,*
   257 F.R.D. 315 (D. Mass. 2009) ................................................................. 38

*O'Connor v. Ford Motor Co.,*
   477 F. Supp. 3d 705 (N.D. Ill. 2020) ........................................................ 41

*Oden v. Boston Scientific Corp.,*
   330 F. Supp. 3d 877 (E.D.N.Y. 2018).......................................................... 40

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.,*
   654 F.3d 618 (6th Cir. 2011) ............................................................... 19, 32

*Prantil v. Arkema Inc.,*
   986 F.3d 570 (5th Cir. 2021) ................................................................... 50

*In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869,*
   934 F.3d 619 (D.C. Cir. 2019) ................................................................. 31

*Randleman v. Fidelity Nat. Title Ins. Co.,*
   646 F.3d 347 (6th Cir. 2011) ................................................................... 31

*Reeb v. Ohio Dep't of Rehab. & Correction,*
   435 F.3d 639 (6th Cir. 2006) ................................................................... 29

*Reinig v. RBS Citizens, N.A.*
   912 F.3d 115 (3d Cir. 2018)..................................................................... 22

*Matter of Rhone-Poulenc Rorer, Inc.,*
   51 F.3d 1293 (7th Cir. 1995) ................................................................... 32

*Rule v. Fort Dodge Animal Health,*
   604 F. Supp. 2d 288 (D. Mass. 2009) ...................................................... 36

*Rusche v. Clampitt,*
   2010 WL 148727 (S.D. Fla. Jan. 12, 2010) ............................................. 38

*Sali v. Corona Reg'l Med. Ctr.,*
   907 F.3d 1185 (9th Cir. 2018) ................................................................. 51

*Sali v. Corona Reg'l Med. Ctr.,*
   909 F.3d 996 (9th Cir. 2018) ................................................................... 51

*Sandusky Wellness v. ASD Specialty Healthcare, Inc.,*
   863 F.3d 460 (6th Cir. 2017) ................................................................... 31

*Schneider v. BMW of N.Am., LLC,*
2022 WL 1310457 (D. Mass. April 22, 2022) ............................................................. 35

*Sher v. Raytheon Co.,*
419 F. App'x 887 (11th Cir. 2011) .......................................................................... 47

*Sheris v. Nissan N. Am. Inc.,*
2008 WL 2354908 (D.N.J. June 3, 2008) ................................................................. 36

*Sprague v. Gen. Motors Corp.,*
133 F.3d 388 (6th Cir. 1998) (en banc) ................................................................ 29, 38

*Stearns v. Ticketmaster,*
655 F.3d 1013 (9th Cir. 2011) ................................................................................ 39

*Szabo v. Bridgeport Machines, Inc.,*
249 F.3d 672 (7th Cir. 2001) ............................................................................... 49, 52

*Szymczak v. Nissan N. Am., Inc.,*
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ......................................................... 36

*Tershakovec v. Ford Motor Co, Inc.,*
79 F.4th 1299 (11th Cir. 2023) ............................................................................... 37, 39

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Pracs. and Prods. Liab. Litig.,*
915 F. Supp. 2d 1151 (C.D. Cal. 2013) .................................................................. 36

*In re Toyota Motor Corp., Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.,*
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................. 33

*Treuhaft v. Mercedes-Benz USA, LLC,*
2021 WL 2864877 (C.D. Cal. July 6, 2021) ........................................................... 36

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.,*
2018 WL 497071 (D.N.J. Jan. 22, 2018) ................................................................. 44

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) ................................................................................................ 21

*Unger v. Amedisys Inc.,*
401 F.3d 316 (5th Cir. 2005) ................................................................................... 48

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ................................................................. 44

*In re Vioxx Class Cases*,
    180 Cal.App.4th 116 (2009) ..................................................................... 39

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................*passim*

*Weinberg v. Sun Co., Inc.*,
    565 Pa. 612, 777 A.2d 442 (Pa. 2001) ..................................................... 42

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .................................................................... 20

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 858 (6th Cir. 2018) .................................................................... 26

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) .................................................................... 19

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) .........................................................49, 50, 51

## Statutes, Rules and Constitutional Provisions

815 Ill. Comp. Stat. 505/1, *et seq.*............................................................... 41

Cal. Bus. & Prof. Code, § 17200.................................................................. 41

Cal. Civ. Code § 1750, *et seq.*..................................................................... 40

Fed. R. Civ. P. 23 .........................................................................*passim*

Fed. R. Civ. P. 23(a) ................................................................................. 50

Fed. R. Civ. P. 23(a)(2) .............................................................*passim*

Fed. R. Civ. P. 23(b) ..............................................................46, 48, 50

Fed. R. Civ. P. 23(b)(3) .............................................................*passim*

Fed. R. Civ. P. 23(c)(1)............................................................................. 49

Fed. R. Civ. P. 23(e)................................................................................. 48

Fed. R. Civ. P. 23(f) ............................................................................ 1, 16

Fed. R. Evid. 101 ..................................................................................... 47

Fed. R. Evid. 702 ................................................................................*passim*

Fed. R. Evid. 1101 .............................................................................. 47, 48

Fed. R. Evid. 1101(a) ............................................................................... 47

Fed. R. Evid. 1101(b) ............................................................................... 47

Fed. R. Evid. 1101(c) ............................................................................... 48

Fed. R. Evid. 1101(d) ............................................................................... 48

Fla. Stat. §§ 502.201, *et seq.* ................................................................. 41

G.L. c. 93A, § 9 ....................................................................................... 42

Mass Gen. Laws Chapter 93A, §§ 1, *et seq.* ..................................... 24, 41

Mo. Rev. Stat. §§ 407.010, *et seq.* ........................................................ 41

New York GBL §§ 349, 350 ..................................................................... 41

Ohio Rev. Code Ann. §§ 1345.01, *et seq.* ............................................. 41

73 P.S. 201-1, *et seq.* ............................................................................... 41

U.S. Const. amend. VII ....................................................................... 29, 31

## Other Authorities

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
    N.Y.U. L. Rev. 97, 125–26 (2009) ................................................... 46

John Heywood, Book of Proverbs (1546) ............................................... 17

## STATEMENT REGARDING ORAL ARGUMENT

Nissan believes that oral argument will assist the Court. The case involves significant questions of law, including the degree to which a district court must consider evidence of material differences among class members in assessing commonality and predominance under Rule 23, and whether a district court should rule on the admissibility of expert testimony offered in support of class certification, an issue that has divided the circuits and has not yet been addressed by the Court.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under Rule 23(f) of the Federal Rules of Civil Procedure because the underlying order granted class certification and the Court granted a timely petition for permission to appeal.  The district court had jurisdiction under 28 U.S.C. § 1332.

## STATEMENT OF THE ISSUES

1. Did the district court fail to perform the required rigorous analysis of commonality under Rule 23(a)(2) when it declared it could not address evidence of material dissimilarities among vehicles that could produce different outcomes at trial?

2. Did the district court fail to perform the required rigorous analysis of predominance under Rule 23(b)(3) when it declared it could not address evidence of material dissimilarities among vehicles and owners, ignored substantive state law requirements, and failed to identify and weigh individual questions against any common questions?

3. When expert evidence bears on the existence or predominance of common issues under Rule 23(a)(2) and (b)(3), must the court resolve challenges to the evidence's admissibility under Federal Rule of Evidence 702 before applying Rule 23?

## INTRODUCTION

Nissan introduced Automatic Emergency Braking (AEB) systems in its vehicles to help drivers avoid crashes and save lives.  Ten Plaintiffs complain that sometimes the AEB systems in their cars gave alerts or applied braking when it was not necessary

to avoid a crash.  They brought claims in their ten respective States, asserting multiple claims in each State related to four different Nissan models and multiple model years of those vehicles.  For each State, Plaintiffs sought to certify a single class covering all claims and all vehicles.  Nissan argued that material dissimilarities among the AEB systems preclude class treatment, pointing to "different configurations," "different software updates," and "the changing nature of Nissan's knowledge."  Mem., R.306, PageID#6979 ("Op.").  The district court refused to consider these dissimilarities, declaring: "These arguments are rooted in a level of specificity simply not required at the certification stage."  *Id.*

The district court's belief that it was not required to consider evidence showing material dissimilarities within a proposed class was incorrect as a matter of law.  Indeed, this Court recently vacated a class certification order in another alleged automobile-defect case for the very same error—applying a "surface-level approach" in assessing whether issues of defect, knowledge, and materiality were common across all vehicles, instead of "grappl[ing] with" differences among them.  *In re Ford Motor Co.*, 86 F.4th 723, 728 (6th Cir. 2023).  For this reason alone, the decision below must be vacated.

Beyond that, the decision should be reversed because the record shows that common questions will not predominate over individual questions in trying Plaintiffs' claims.  Here again, the district court mistakenly believed it could not address whether material variations in the evidence could produce different outcomes within the class, deeming that "a merits discussion, inappropriate for resolution at the class certification

2

stage." Op. 17–18. To the contrary, a district court assessing predominance *must* "describe" the "elements" of plaintiffs' claims and "explain which could be proved across the board for the entire class." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 301 (6th Cir. 2023). Here, the elements of Plaintiffs' claims cannot be proven across the board because they depend upon individual reliance, presentment for repair, vehicle performance, and the equities of each transaction, among other issues. Because this is clear on the record, no class can be certified, and the Court should so hold.

If the Court instead vacates and remands for further analysis, it should instruct the district court to consider the elements of Plaintiffs' claims and analyze the variations in the evidence at the level of specificity Rule 23 requires. As part of this analysis, the Court should require the district court to resolve Nissan's challenges to the admissibility of Plaintiffs' defect and damages experts because Plaintiffs rely on those experts to claim common defect and common damages issues. The majority position in the Circuits is that a district court must resolve Rule 702 motions brought against an expert before relying on that expert's testimony to find Rule 23 has been met. The majority position is correct and should be adopted as the rule in the Sixth Circuit as well.

## STATEMENT OF THE CASE

Plaintiffs from ten States claim that the AEB systems in 31 different combinations of Nissan vehicle models, model years, and software versions violate some combination of the fraud, deceptive trade practices, express warranty, implied

warranty, and unjust enrichment laws of these States.  Plaintiffs themselves own only a handful of these combinations, as illustrated by the chart below:

| Plaintiff | State | Vehicle |
|---|---|---|
| Angelene Hoeffken | California | 2018 Rogue |
| Lakeita Kemp | Connecticut | 2019 Altima |
| Courtney Johnson | Florida | 2018 Rogue Sport |
| Todd Burrows | Illinois | 2017 Rogue |
| David Turner | Massachusetts | 2017 Rogue Sport |
| Scott and Jane Reeves | Missouri | 2017 Rogue |
| Nancy Housell | New York | 2018 Rogue |
| Michelle Bereda | Ohio | 2018 Rogue |
| Jeff Olkowski | Pennsylvania | 2018 Rogue |
| Vaughn Kerkorian | Texas | 2017/2018 Rogue |

The questions presented on this appeal from an order certifying a single class for each State focus on whether material dissimilarities among the vehicles and class members preclude deciding their claims in the aggregate.  This Statement addresses the record relevant to those questions.

## A.    Automatic Emergency Braking (AEB) Technology Is Introduced to Help Drivers Prevent Crashes and Save Lives.

AEB systems help drivers prevent crashes and save lives.  Convinced of that fact, the National Highway Traffic Safety Administration ("NHTSA") and the Insurance Institute for Highway Safety asked automakers to convene a working group to accelerate their development and use.  Harrington Rpt., R.261-1, PageID#5101–04. Out of the working group discussions, twenty automakers, including Nissan, voluntarily

agreed in 2016 to equip AEB systems as a standard feature on almost all new cars sold in the U.S. by 2022.  Vol. Commitment, R.261-27, PageID#5495–5528; NHTSA Press Rel., R.261-32, PageID#5624–26.

AEB systems in Plaintiffs' vehicles use a radar sensor to measure the distance to and relative speed of the vehicle ahead in the same travel lane.  Yahagi Dec., R.263-6, PageID#5960–62, ¶¶5–8.  An advanced driver assistance system (ADAS) controller gathers information from the radar and other systems to judge whether some aspect of the AEB system should be activated and to what extent.  *Id.*  If a potential collision is detected, the AEB system first issues a visual and audible alert to the driver.  If the driver fails to act, the AEB system issues a more intense warning and may start braking.  Should a collision become imminent, the system brakes harder.  *Id.*  To alert following vehicles, the AEB system illuminates the brake lights just as if the driver were pressing the brake pedal.  The AEB system also limits braking force at speeds above 25 mph.  Yahagi Dec., R.263-6, PageID#5962–63, ¶11.  The graphic below illustrates the sequence:



Illustration, R.263-10, PageID#5988 (simplified).

Though AEB systems prevent crashes and save lives, they are not perfect.  As the automakers' Voluntary Commitment recognized, the systems "have [] technological limitations, such as a narrow range of operating speeds or sensors that are adversely affected by weather conditions, dirt or harsh lighting conditions."  Vol. Commitment, R.261-27, PageID#5497.  These systems also require a complex design balance between minimizing false detections while ensuring activation in real emergencies.  Bosch Presentation, R.263-17, PageID#6088–93.  Consequently, the Commitment recognized that "despite extensive testing by automakers, it is possible that customers could experience unique situations resulting in unwarranted interventions by the systems."  Vol. Commitment, R.261-27, PageID#5497.  In this situation, the driver can always override Nissan AEB systems by pressing the accelerator.  Yahagi Dec., R.263-6, PageID#5962–63, ¶11.  Some Plaintiffs have done just that.  *E.g.*, Olkowski Dep., R.

261-19, PageID#5420, 5423; Turner Dep., R.261-22, PageID#5463. A vehicle owner may also deactivate the AEB system entirely, and some Plaintiffs have done so. *E.g.*, Housell Dep., R. 261-14, PageID#5325; Johnson Dep., R. 261-15, PageID#5337.

Nissan has always identified AEB limitations in its Owners' Manuals. *E.g.*, 2019 Altima Owner's Manual, R.261-28, PageID#5538–44; 2017 Rogue Owner's Manual, R.261-29, PageID#5563–66. Customers are advised:

> In some road or traffic conditions, the FEB system may unexpectedly apply partial braking. When acceleration is necessary, continue to depress the accelerator pedal to override the system.

Other automakers provide similar disclosures. *See* Harrington Rpt., R.261-1, PageID#5108–14 (excerpts of Owners' Manuals for Honda, Mercedes, Toyota, Chevrolet, Hyundai, and Kia vehicles).

The experiences in this case illustrate the protections AEB systems deliver. Plaintiff Michelle Bereda testified her AEB system prevented her from rear-ending another vehicle, Bereda Dep., R.261-11, PageID#5283, and another witness described two instances where the AEB in his Rogue prevented accidents. Mancini Dep., R261-8, PageID#5266–68. No Plaintiff, in contrast, claims an AEB system activation ever caused a crash.

## B. Nissan Includes AEB Systems in the Class Vehicles and Updates Their Software as It Receives Real-World Performance Data.

At issue in this case are four vehicle models Nissan equipped with AEB systems using a "Continental ARS410" radar. As relevant here, two models—the Rogue and

Rogue Sport—had these AEB systems beginning with the 2017 model year. A third, the Altima, had one starting with the 2019 model year. And a fourth, the Kicks, had one starting with the 2020 model year. The AEB system for every model is unique, in part, because the radar location and environment is different, requiring the ADAS controllers to be tuned for each model; indeed, sometimes a single model has multiple ADAS controller configurations matching different vehicle configurations within the model. Yahagi Dec., R.263-6, PageID#5962, ¶9.

As a normal part of product improvement, Nissan updated the AEB system software during 2017–2019 as it received real-world performance data. Nissan has updated both radar and ADAS controller software logic. *Id.*, ¶¶9, 13–17. The most significant updates are outlined below and illustrated at R.263-18, PageID#6095 (timeline of software updates). Considering just the model, model year, and radar software updates, each statewide class includes 31 distinct AEB system configurations. The following chart shows the percentage of each configuration within the combined ten classes:

| Vehicle | Software Level | | |
|---|---|---|---|
| | S0 | S1 | S2 |
| 2017 Rogue | 2.4% | 0.2% | 7.3% |
| 2018 Rogue | 3.4% | 1.5% | 12.7% |
| 2019 Rogue | 0.0% | 11.9% | 1.2% |
| 2020 Rogue | | 0.4% | 9.2% |
| 2017 Rogue Sport | 0.1% | 0.0% | 0.6% |
| 2018 Rogue Sport | 0.7% | 0.4% | 2.1% |
| 2019 Rogue Sport | 0.0% | 2.8% | 1.7% |
| 2020 Rogue Sport | | 0.0% | 4.6% |
| 2021 Rogue Sport | | | 2.6% |
| 2019 Altima | 0.0% | 9.8% | 0.4% |
| 2020 Altima | | 3.5% | 7.3% |
| 2021 Altima | | | 6.2% |
| 2020 Kicks | | | 4.0% |
| 2021 Kicks | | | 2.8% |
| Total | 6.6% | 30.6% | 62.8% |

Soderborg Rpt., R.263-1, PageID#5891.

**The ADAS Software Update for Rogue**.

The 2017 model year Rogue was produced in October 2016. Chart, R.263-19, PageID#6097. The first incident of AEB unwanted operation was reported eight months later in April 2017 and related to a warning alert triggered by a low overpass in Canton, Michigan. NHTSA Presentation, R263-8, PageID#5982; Project File, R.263-11, PageID#6003. After investigating the incident, Nissan updated the software logic for the ADAS controllers used in the Rogue and the Rogue Sport, and new ADAS controller parts reflecting this update were used beginning in September 2017. Yahagi Dec., R.263-6, PageID#5963–64, ¶13.

9

**The S1 Software Update**.

A second series of investigations took place in the northeast United States beginning in late September 2017 after reports of a false warning alert at a low-hanging traffic light and unnecessary braking at a steel trellis bridge in upstate New York and two railroad tracks on Long Island. Yahagi Dec., R.263-6, PageID#5964; NHTSA Presentation, R.263-8, PageID#5982. Investigators later visited additional locations, including the Plano, Texas railroad crossing where Plaintiff Kerkorian reported unnecessary activations. *Id.* In response, Nissan and suppliers developed the "S1" level radar and ADAS controller software updates. Hammoud Dec., R.263-5, PageID#5955–56, ¶¶9–10. Nissan validated the software updates at its proving grounds and also evaluated the new versions at each previously reported location to confirm no false alerts or unwarranted activations occurred. Yahagi Dec., R.263-6, PageID#5964, ¶15; Gokan Dep., R.261-6, PageID#5244–46.

The S1 software updates were implemented beginning in summer 2018. A technical service bulletin advised dealers of the update for customer vehicles, and Nissan notified dealers to update unsold vehicles in dealer inventory. Hammoud Dec., R.263-5, PageID#5955–56, ¶10; TSB Rev., R.261-37, PageID#5660-5663. Nissan also mailed letters to all registered owners to make them aware of the software update. Hammoud Dec., R.263-5, PageID#5955–56, ¶10; Customer Letter, R.261-39, PageID#5699–5701.

By September 2018, all new production 2019 Nissan Rogue and Rogue Sport vehicles used radars and ADAS controllers with the S1 update. Chart, R.263-18, PageID#6095. When the 2019 Altima began production, it also contained the S1 level software. *See* Chart, R.263-19, PageID#6097; Gokan Dec., R.263-4, PageID#5949–50, ¶¶10–11.

**The S2 Software Update.**

In mid-2019, Nissan released another AEB software update—the "S2" update—to improve target recognition in certain parking garages. Hammoud Dec., R.263-5, PageID#5956, ¶11. Nissan and the supplier identified the unique features of garages where customers had reported unneeded AEB alerts or braking and updated the radar software where possible without negatively impacting AEB performance. Yahagi Dec., R.263-6, PageID#5965, ¶16.

The S2 software updates for the Rogue and Rogue Sport were communicated to Nissan dealers through an updated technical service bulletin. Hammoud Dec., R.263-5, PageID#5956, ¶11. Around the same time, Nissan launched a voluntary service campaign to encourage 2017–2018 Rogue and Rogue Sport owners to obtain the free S2 software update. Nissan mailed letters to owners and asked dealers to apply the update to all vehicles brought in for unrelated service. *Id.* The campaign was successful. As of August 28, 2022, over 75% of the 2017–2018 Rogue and Rogue Sport vehicles covered by the campaign had received the S2 update. Soderborg Rpt., R.263-1, PageID# 5889–91.

11

By July 2019, new parts with the S2 level software logic were available and used in some 2019 Rogue and Rogue sport vehicles, all 2020 Rogue and Rogue Sport models, and all 2021 Rogue Sport vehicles.   PE19-010 Resp., R.263-9, PageID#5985; Chart, R.263-19, PageID#6097.   Most 2020 Altima and all 2021 Altima vehicles had S2 software installed at the factory, as did all 2020–2021 Kicks vehicles.  *Id.*

## C.   The Updates Successfully Reduce Unwanted Activations.

The evidence shows that the software updates worked.  Warranty claims for unneeded activations fell from low to very low numbers.  For example, 3.10% of 2018 Rogue owners (S0 level) made a warranty claim for a potential AEB issue during the vehicles' first two years in service, while just 0.20% of 2020 Rogue owners (predominantly S2 level) did during the same timeframe.  Soderborg Rpt., R.263-1, PageID#5893.  Likewise, 2.75% of 2017 Rogue Sport owners (S0 level) made AEB warranty claims, while just 0.31% of 2019 Rogue Sport owners (S1 or S2 level) did.  *Id.* The "substantial difference" between the rates of the earlier model years and the later model years suggests "meaningful differences in performance."  *Id.*, PageID#5893–94, 5898.

The named Plaintiffs' own experiences show the updates work.  The S1 update eliminated the unneeded activations of Plaintiff Kerkorian's 2018 Rogue at the railroad crossing in Plano, Texas.  Even Plaintiffs' engineer could not cause an unneeded activation at the crossing after the S1 update.  Loudon Rpt., R.247-3, PageID#4532;

12

Loudon Dep., R.261-34, PageID#5650–51.  In addition, *no Plaintiff* who received the
S2 update has claimed *any* unwanted activation after receiving that update.

**D.    At Class Certification, Plaintiffs Offer Expert Opinions to Support Class-wide Defect and Damages Contention, Which Nissan Moves to Exclude.**

Plaintiffs offered expert witnesses to support their claim of common liability and
damages questions cutting across all the AEB systems.

To claim a common defect, Plaintiffs offered Steven Loudon.  Before this
litigation, Loudon had no experience with and had never worked on an AEB system or
any other Advanced Driver Assistance System project.  Indeed, he had no design,
development, testing, or field evaluation responsibility for any AEB or similar system.
Loudon Dep., R.260-1, PageID#5041–46.

For his "methodology," Loudon just reviewed documents and drove some
vehicles—*none of which had S2 level software*.  Based on this, he opined that the
AEB systems were defective because the radar was not good enough at "reliably
discriminating between real objects that could cause a collision and stationary objects
that pose no threat of a collision."  Loudon Mem., R.259, PageID#5001.  When
deposed, Loudon admitted, "*I don't know what [the] specific defect is*."  Loudon
Dep., R.260-1, PageID#5061.  Pressed to provide a standard Defendants allegedly
failed to meet, Loudon admitted he was not "asked to define a threshold," and "can't
really put a number" on it.  Loudon Dep., R.260-1, PageID#5056–59.  Loudon also
proclaimed that all the AEB systems in the class are substantially similar, but he

performed no analysis to determine whether this was so. *Id.*, PageID#5052–53, 5065–67. He acknowledged the software updates but admitted he did nothing to measure how they performed. Indeed, he did not evaluate how *any* of the systems performed because he was not asked to do so. Loudon Mem., R.259, PageID#5011–13; Loudon Dep., R.260-1, PageID#5057–58.

Because of these flaws, among others, Nissan moved to exclude Loudon. Loudon Mot., R.258, PageID#4995.

To claim that damages could be calculated in common, Plaintiffs offered Steven Gaskin and Colin Weir. Their theory of damages was that, had the risk of unneeded activation been properly disclosed, the prices of all the vehicles would have dropped. Gaskin/Weir Mem., R.256, PageID#4607. Gaskin performed an online survey that contrasted a Nissan Rogue having a braking system that "may cause the vehicle to slow down or stop abruptly" with one that "works reliably for the life of the vehicle." *Id.*, PageID#4614. Gaskin's survey produced the astonishing claim that the prices of vehicles would have dropped 33.4% to 48.1% had Nissan disclosed the alleged defect. *Id.*, PageID#4622.

Nissan moved to exclude the testimony of Plaintiffs' damages experts on several grounds. Gaskin/Weir Mem., R.256, PageID#4606–07. For one, Gaskin's survey did not fit their legal theories and could not support certification. *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); Gaskin/Weir Mem., R.256, PageID#4619. In addition, the survey presented a false choice between an AEB system with the potential for unneeded

14

activation and one that "works reliably." Gaskin/Weir Mem., R.256, PageID#4613–19. None of Plaintiffs' experts could explain what "works reliably" meant. *Id.*, PageID#4607. And the way the choices were presented suggested that "works reliably" meant no potential for unneeded activation – describing a system that does not exist. *Id.*, PageID#4614. The survey also failed to account for supply-side considerations and had sundry methodological flaws. *Id.*, PageID#4624–30.

## E.    The District Court Declines to Rule on the Experts and Certifies Ten Statewide Classes.

On March 31, 2023, the District Court "decline[d] to consider" the motion to exclude Gaskin and Weir. Expert Order, R.305, PageID#6970. Although their opinions are Plaintiffs' only putative evidence of class-wide damages, the District Court held they were not "critical to [the court's] class certification analysis." *Id.*

The Court also "decline[d] to consider" Plaintiffs' motion to exclude a Nissan witness they claimed was not adequately identified. *Id.*, PageID#6971. Although the Nissan witness's declaration provided that "the AEB systems in all class vehicles are not substantially similar because of various software updates," the Court deemed this evidence "not critical to the Court's ruling on class certification." *Id.*

And while the Order did not discuss the motion to exclude Loudon, it included the ECF # in the list of denied motions to exclude, apparently concluding Loudon's expert testimony was not critical to class certification either. *Id.*, PageID#6972 (denying ECF 258).

15

The same day, the District Court entered an order certifying ten statewide classes. Addressing commonality, the District Court held that the claims "center around proof of a defect in the specific sensor used in the class vehicles." Op. 7. The District Court noted that "Plaintiffs point to several common questions, including whether the AEB systems are defective, whether Nissan knew of the defect, whether Nissan concealed the defect, and whether Nissan's conduct rises to the level of being violative of certain common law and statutory protections." *Id.*

The District Court did not, however, discuss whether common *evidence* existed for any of these "common questions." Indeed, it did not cite to the evidentiary record or identify any evidence that could resolve Plaintiffs' contentions on a class-wide basis. In response to Nissan's evidence demonstrating important differences in the AEB systems, the District Court stated: "These arguments are rooted in a level of specificity simply not required at the certification stage." *Id.* Despite this, the District Court found that the predominance requirement was satisfied for all of Plaintiffs' causes of action because of the existence of a supposed "class-wide defect." Op. 13–23. As for Defendants' arguments that elements of Plaintiffs' claims raised individual issues, the District Court again called that "a merits discussion, inappropriate for resolution at the class certification stage." Op. 17–18. The District Court did not address damages at all.

Nissan petitioned for permission to commence an interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure. This Court granted the petition.

## SUMMARY OF THE ARGUMENT

*When all candles be out, all cats be grey*
*All things are then of one colour, as who say.*

John Heywood, Book of Proverbs, Part 1, chapter 5 (1546).

Rule 23 requires district courts at class certification to shine a bright light on the evidence and assess how much variation exists among plaintiffs and their claims. Similarities yield common issues that can be adjudicated in common. Material dissimilarities yield individual issues that cannot be aggregated. Sorting one from the other requires a close, clear-eyed inquiry—what this Court and others have called a "rigorous analysis."

The district court mistakenly thought it was not allowed to look closely at the evidence and assess whether material differences preclude aggregating Plaintiffs' claims. According to the district court, Nissan's evidence showing material variations among its AEB systems across vehicle models and further variations within models entailed too specific an inquiry. Having declined to consider the evidence, the district court found that common issues predominated in Plaintiffs' claims. Without shining a light on the record, it found all "cats be grey."

This was error. Commonality is a matter of evidence, and the district court must therefore assess the evidence. As this Court held in *In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023), the district court was required to address Nissan's contentions and determine whether differences among products destroyed the commonality of the defect and knowledge questions.

The district court made the same error in analyzing whether common questions will predominate over individual questions in resolving Plaintiffs' claims, as Rule 23(b)(3) requires. This Court has held that a district court assessing predominance *must* "describe" the "elements" of plaintiffs' claims and "explain which could be proved across the board for the entire class." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 301 (6th Cir. 2023). But the district court thought that considering how the evidence related to the elements of the claims was "a merits discussion, inappropriate for resolution at the class certification stage." Op. 17–18. It therefore did not engage with the actual requirements of the state law claims as they applied to the facts of record.

A correct rigorous analysis shows that individual issues will predominate in all of Plaintiffs' claims. Under Nissan's repair warranty, a claim for breach of express warranty will depend on whether a customer sought and was denied a repair during the warranty period. An implied warranty claim will depend on an assessment of each customer's experience with his or her vehicle. For fraud claims, the answers to questions about Nissan's knowledge and buyers' reliance will all depend on which vehicle, what point in time, and what buyer are at issue. And for unjust enrichment claims, the equitable balancing those claims require implicates all the individual questions raised by all the other claims. Because common questions will not predominate in Plaintiffs' claims, the order certifying a class should be reversed, not just vacated.

If, however, the Court vacates and remands for further consideration of class certification, the Court should direct the district court to conduct the rigorous analysis that Rule 23 requires. As part of this analysis, the Court should hold that it must rule on the admissibility of Plaintiff's putative design-defect and damages experts before considering whether their testimony can support common issues. This is the majority rule among the Circuits, and this Court should adopt it.

## STANDARD OF REVIEW

An order certifying a class is subject to review for abuse of discretion. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

## ARGUMENT

Class actions "represent a significant departure from 'our constitutional tradition of individual litigation.'" *In re Ford Motor Co.*, 86 F.4th 723, 725 (6th Cir. 2023) (per curiam), *quoting Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). The "exponential aggregation of claims and parties magnifies the stakes of litigation and can thus have massive ramifications for plaintiffs and defendants alike." *Id.* at 726. Consequently, a district court considering a motion to certify a class must conduct a "rigorous analysis" to ensure that Rule 23's requirements are met. *Davis v. Cintas Corp.*,

717 F.3d 476, 484 (6th Cir. 2013), *quoting Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  The district court's order contains many errors, but they all stem from the same source: the court's mistaken belief that it could not examine how material dissimilarities among the products and people covered by the proposed classes would affect the outcomes of their claims.

### A.  The District Court Failed to Perform the Required Rigorous Analysis to Identify and Balance Common and Individual Issues, Mistakenly Believing It Could Not Do So.

Under Rule 23(a)(2), a class may be certified "only if," among other things, "there are questions of law or fact common to the class."  And under Rule 23(b)(3), a class of plaintiffs seeking damages may be certified only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."

Rule 23 does not establish a "mere pleading standard": a plaintiff must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). Consequently, "the class determination should be predicated on evidence."  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013); *see also Gooch v. Life Investors Ins. Co of Am.*, 672 F.3d 402, 417 (6th Cir. 2012).

Indeed, a court *cannot* assess whether the commonality and predominance requirements are met without examining the evidence because the evidence, applied to the elements of the parties' claims and defenses, determines what (if anything) can be

decided in common. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. A "common question" thus refers to "a contention that, when determined to be true or false, would '***resolve*** an issue that is central to the validity of each one of the claims ***in one stroke***'" for all class members. *Ford*, 86 F.4th at 727, *quoting Dukes*, 564 U.S. at 350 (emphasis added). An individual question, by contrast, is a contention that the factfinder could answer differently for different plaintiffs because the evidence varies among them. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

A court's first task is therefore to determine whether there are "[d]issimilarities within the proposed class," because dissimilarities "are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350. Not every dissimilarity matters. The dissimilarities must be legally material, meaning they could affect the outcome of a claim. The analysis thus begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The court must "understand what the plaintiffs will need to prove;" then "evaluate the extent to which they can prove their case with common evidence." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020). And *all* the evidence must be assessed, no matter who will present it, because "[d]issimilarities within the proposed class" can be shown by anyone's evidence. *Dukes*, 564 U.S. at 350; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 601 (3d Cir. 2012) (explaining that a district court has an

"obligation to consider all relevant evidence . . ., whether offered by a party seeking class certification or by a party opposing").

The district court failed to perform the required rigorous analysis. Indeed, the court erroneously thought it *could not* perform that analysis, believing that arguments about product variation were "rooted in a level of specificity simply not required at the certification stage." Op. 7. This was simply wrong. In a very recent case involving claims against another automaker for a supposedly defective component, this Court held that Rule 23's "rigorous analysis" requires just this level of specificity, and it vacated a certification order for failing to perform it. *See In re Ford Motor Co.*, 86 F.4th 723, 727–28 (6th Cir. 2023) (vacating order for failing to address Ford's evidence that "many design and manufacturing changes" over time "would have remedied both of plaintiffs' alleged theories of [defect]").

The district court also expressly refused to assess the evidence showing material variations on the elements of Plaintiffs' claims, saying that this "ultimately [went] to the merits of the claims," Op. 8, and was "ultimately a merits discussion." Op. 17. This, again, was error. The very nature of the commonality and predominance analysis *requires* examining the merits to determine whether the factfinder could fairly deliver a common answer or not. *See, e.g., Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011); *Reinig v. RBS Citizens, N.A.* 912 F.3d 115 (3d Cir. 2018). This "is a crucial part of avoiding the procedural unfairness to which class actions are uniquely susceptible." *In Re Ford*, 86 F.4th at 729. That the analysis overlaps with the merits "cannot be helped."

*Dukes*, 564 U.S. at 351. Here is the governing principle: the district court *must* determine whether a reasonable factfinder could reach different decisions for different class members on the claims because of material factual differences among the class, but the court *must not* decide the claims itself. "[T]he court 'must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits.'" *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023).

The district court misunderstood this distinction, and it therefore failed to perform the commonality and predominance analyses that Rule 23 requires. For that reason alone, its order certifying the class must be vacated.

## B. The Required Analysis Shows Material Differences Within the Certified Classes on the Questions the District Court Erroneously Designated as "Common" Under Rule 23(a)(2).

A correct analysis shows that each of the three questions the district court designated as common—defect, knowledge, and whether "violations" occurred—are instead individual because of material variations in the relevant evidence within the classes.

### 1. The element of defect does not pose a common question because the AEB systems varied materially between vehicles and over time.

The first question, and the one on which the district court relied most heavily, is whether all the AEB systems were defective. Op. 7. This question cannot be answered

in common because both the legal rules governing the claims and the evidence relevant to those claims vary materially within each class.

First, the legal rules defining a "defect" vary among the States and between causes of action—especially because none of the claims in this case is a design-defect product liability claim. The claims are instead for express and implied warranty, unjust enrichment, and consumer protection, and those claims have very different elements. *Cf. Iannacchino v. Ford Motor Co.*, 455 Mass. 623, 888 N.E. 2d 879, 888 (2008) (applying Massachusetts General Law chapter 93A, requiring plaintiffs to "identify a legally required standard the vehicles were at least implicitly represented as meeting, but allegedly did not"); *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (applying Texas law of implied warranty of merchantability, requiring proof that the product is "unfit for the ordinary purposes for which they are used"). Moreover, under no claim is it enough to merely identify instances where the product operated in some sub-optimum way. *See Grodzitsky v. American Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (rejecting expert opinion that vehicle window regulators were defective because they "shouldn't fail ever"). Each claim requires a more detailed evaluation of costs, benefits, tradeoffs, alternatives, and sometimes representations to assess liability.

Second, the evidence relevant to the elements of each claim shows material dissimilarities within each statewide class because each class includes at least 31 distinct combinations of vehicle model, model year, and software. *See* pp.8–9, *supra.* As noted above, there are four Nissan models (Rogue, Rogue Sport, Altima, and Kicks) and

multiple model years of each. The ADAS controller is unique for each model and model year, and sometimes there were multiple controllers within a model year. Over time, there were also three major software versions for the radar (S0, S1, and S2). *See* pp.10–12, *supra*. These differences between vehicles resulted in material differences in the AEB systems' performance. Vehicles with S1 and S2 level software no longer activated at locations where vehicles with S0 level software had activated unnecessarily, as Plaintiff Kerkorian's own experience showed. Warranty claims related to unnecessary activations also dropped from low to very low. *See* pp.12–13, *supra*.

The trial court mistakenly believed that all these dissimilarities had to be ignored because they were "rooted in a level of specificity simply not required at the certification stage." Op. 7. To the contrary, here, just as in *Ford*, the dissimilarities had to be considered because they could prevent a common verdict from being delivered for all vehicles at once. In *Ford*, plaintiffs claimed that whether the brake master cylinders in certain Ford trucks were defective posed a common question. 86 F.4th at 727. Ford responded that its supplier had made design and manufacturing changes that affected performance. This Court held that the district court abused its discretion in failing to address Ford's response:

> Perhaps those changes were immaterial, meaning that any defect would persist despite the alterations. But we cannot say so with any certainty because the district court did not detail its reasons for rejecting Ford's arguments. It did not, for instance, grapple with whether the August 2016 Redesign of the master cylinder…made any material difference to the class's alleged defect.

*Id.* at 728 (citation omitted).

Here, the district court made the same error. And because the record in this case shows that material variations ***actually do exist***, not just that they might exist, this Court should reverse the order certifying a class, as it did in *In re Am. Med. Sys.* upon finding that design and manufacturing differences across models allowed for varying results on products liability claims. 75 F.3d 1069, 1081 (6th Cir. 1996). Other courts have likewise frequently found that design variations precluded common resolution of defect-related claims. *See Johnson v. Harley-Davidson Motor Co. Grp. LLC*, 285 F.R.D. 573, 579 (E.D. Cal. 2012) (multiple design configurations among motorcycles); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 583 (C.D. Cal. 2012) (multiple parts among drainage systems); *Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 110 (D. Md. 2010) (multiple configurations of seat designs); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 343–45 (D.N.J. 1997) (multiple ignition switch designs).

Of course, immaterial differences among products do not create individual issues. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 858 (6th Cir. 2018) (commonality existed because two platforms at issue were nearly identical and most differences were aesthetic). But here, the differences among the AEB system are not aesthetic or otherwise immaterial—they led to different performance. Plaintiffs thus cannot show that a reasonable jury would have to answer the question of defect the same for all variations. The differences make the defect-related elements of Plaintiffs' claims an individual issue, not a common one.

26

**2.      The element of knowledge does not pose a common question because Nissan's knowledge varied between vehicles and over time.**

The second question the district court designated as common was "whether Nissan knew of the defect." Op. 7. For the warranty claims, which do not require knowledge, knowledge cannot be a unifying common question. But even when knowledge is an element, it does not present a common question because Nissan's knowledge changed over time and varied among the 31 AEB systems.

In *Ford*, this Court rejected the district court's finding that Ford's knowledge presented a common question because the product design had changed over time, and Ford's knowledge thus also changed. As the Court explained, "Ford may well have believed any existing problem was fixed by Hitachi after the manufacturer altered its cylinder design." 86 F.4th at 728; *see also In re MyFord Touch Consumer Litig.*, 2016 WL 6873453 at *4 (N.D. Cal. Nov. 22, 2016) (holding that knowledge was not a common question because of software updates made to infotainment system).

Just so here. Production of the earliest class vehicles began in 2016. Nissan's first investigation of a field incident commenced in April 2017. *See* p.9, *supra*. By then, the 2017 model year Rogue had been for sale at least eight months. A jury could find that Nissan's knowledge for vehicles sold before April 2017 was different than for those sold after April 2017. Shortly thereafter an ADAS controller software update was implemented to address unnecessary activations. *See* p.9, *supra*. Nissan's knowledge thus changed again.

27

And Nissan's knowledge continued to change each time it received additional information about how the new systems were performing and the supplier made new adjustments to the software in response. When Nissan began a second series of investigations in the northeast United States at the end of September 2017, sales of 2018 model year vehicles had begun. *See* p.9, *supra*; Chart, R.263-18, PageID#6095. Nissan's knowledge was different before and after those investigations. After the investigation, the S1 software updates were developed and validated. Again, Nissan's knowledge was different before and after those updates because it had every reason to believe the updates improved the system performance as, in fact, they did. *See* pp.10–12, *supra*. In the same way, Nissan's knowledge changed with the development and release of the S2 updates. *See* pp.11–13, *supra*. Plaintiffs thus cannot show that a reasonable jury would have to answer the question of knowledge the same for all AEB systems at all points in time.

The district court is less than clear about whether it considered "concealment" a common issue. *See* Op. 13 (indicating the Court found the alleged defect and knowledge to present common questions). But regardless, because defect and knowledge do not present common questions, concealment cannot be a common question either.

**3.    Whether Nissan's conduct violates "certain common law and statutory protections" does not pose a common question because it turns on each claim's separate elements.**

Finally, the district court identified the common question of "whether Nissan's conduct rises to the level of being violative of certain common law and statutory

28

protections." Op. 7. This is phrased at such a high level of generality that it obscures the required Rule 23 analysis instead of performing it. "[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Framing the questions at that level is reversible error. *See Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 644 (6th Cir. 2006) (vacating a district court order for finding a common question in "whether the Defendant violated Title VII"). "What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397. Here, asking whether Nissan is liable for each of two to six claims, under the laws of ten different States, for each of 31 different model/model year/software combinations, for sales made at varying times within each model year, does not ask a single question. It asks dozens of questions about the elements of each claim, applied to the dissimilar facts of each vehicle and owner. The district court, however, did not even identify the claims it found to be common, much less the elements of those claims or the evidence required to meet them. This was legal error.

*     *     *

In sum, the district court did not identify ***any*** question that could be resolved in common across any certified class. Because Rule 23(a)(2) requires at least one common question, the order of class certification must be vacated.

**C.    A Rigorous Analysis Shows That Plaintiffs' Claims Raise Many Individual Questions That Will Predominate Over Any Common Questions.**

Just as the district court over-designated common questions due to its failure to consider material variations in the evidence, so too it under-designated individual questions.   The correct analysis shows that Plaintiffs' claims raise predominating individual questions of liability, and hence Rule 23(b)(3) cannot be satisfied.

**1.    The predominance analysis requires courts to identify all common and individual questions and assess which will predominate at trial.**

A money-damages class action may be certified only if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Assessing predominance requires a court to consider all the contested questions, not just some of them.  Rule 23(b)(3) "requires a court to add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis)."  *Fox v. Saginaw County, Michigan*, 67 F.4th 284, 300 (6th Cir. 2023) (citations omitted).  The court "must then qualitatively evaluate which side 'predominates' over the other."  *Id.*  The question is whether "a class action would achieve economies of time, effort, and expense and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1235 (11th Cir. 2016), *quoting Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

The key in assessing predominance is to "consider how a trial on the merits would be conducted if a class were certified." *Sandusky Wellness v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *quoting Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 326 (5th Cir. 2008).

When deciding liability at trial will turn on individual questions—whether in the claims or defenses—courts usually find that common questions do not predominate. *See Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011); *Fox*, 67 F.4th at 301–02; *Sandusky Wellness*, 863 F.3d at 468–69. Why? Because individual questions must be tried individually, regardless of what is done with any common questions. A defendant has "Seventh Amendment and due process rights to contest every element of liability and to present every colorable defense" for each person suing it. *In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619, 625 (D.C. Cir. 2019). Thus, when a putative class action raises individual questions, the Constitution requires the district court to "establish a mechanism" for resolving them individually, *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018), in a way that protects the parties' rights, *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 88 (1st Cir. 2021).

As a practical matter, when individual trials are required to consider the individual evidence relevant to some elements of liability, the proof on any common elements might as well be presented at the same time. Splitting it out is not a superior

way to resolve the claims. *See Pipefitters Local 636*, 654 F.3d at 631 (so holding for contract claims). Indeed, when the facts relevant to the common questions overlap with the facts relevant to the individual questions, the proof *must* be presented at the same time to avoid violating the Seventh Amendment's prohibition on relitigating issues found by a jury. *See, e.g., Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995); *In re Citizens Bank, N.A.*, 15 F.4th 607, 620 n.15 (3d Cir. 2021).

### 2.     All of Plaintiffs' claims contain predominating individual liability questions.

Under this Court's precedent, all of Plaintiffs' claims raise predominating individual questions that must be resolved to adjudicate liability. The Court should therefore reverse the decision below outright rather than simply vacating it.

#### a.     Breach of express warranty

Plaintiffs from eight States allege claims for breach of express warranty. Op. 15 (listing California, Connecticut, Florida, Illinois, Massachusetts, Missouri, Ohio, and Pennsylvania). The district court cited the existence of a common written warranty to conclude that common questions will predominate in litigating these claims. Op. 17. But the court ignored the terms of the warranty, under which proving breach will require individual evidence.

Nissan's warranty is a *repair* warranty, not a *defect* warranty. Nissan *does not warrant* that its vehicles will be free of defects. It warrants only that Nissan will *repair* defects in *materials and workmanship* that *arise during the time and mileage limits*, if customers *bring their*

*vehicles to authorized Nissan dealers* for repair. Warranty Booklet Excerpts, R.262-34, PageID#5841–45.

A claim for breach of such a repair warranty only arises if the customer presents the vehicle for repair and the warrantor refuses or fails to make the repair. *See, e.g.*, *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 758 (E.D. Mich. 2017); *Gonzalez v. Drew Indus., Inc.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007). Customers who have not sought repairs have no claim. *See, e.g.*, *Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434–45 (11th Cir. 2009); *In re Toyota Motor Corp., Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010). Moreover, the repair must be requested within the warranty period. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

Here, most class members have no possible express warranty claim because more than 97% of them never requested a repair of their AEB systems related to unnecessary activation. Soderborg Rpt., R.263-1, PageID#5886–88.

The experiences of the Plaintiffs also demonstrate that many of the express warranty claims will turn on individual evidence. Some, such as Courtney Johnson and Nancy Housell, had updates performed. Johnson Dep., R.261-15, PageID#5341; Housell Dep., R.261-14, PageID#5395. Other Plaintiffs *never* went to a dealer to obtain the free update despite having received letters offering it. Burrows Dep., R.261-12, PageID#5296–98; Turner Dep., R.26-22, PageID#5467–69. One Plaintiff, Jane

Reeves, declined to allow the Nissan dealer to replace her radar at no charge because of a concern over spoliation of evidence. Repair Order, R. 262-70, PageID#5809–14.

On this record, every express warranty claim will require individual proof of a requested and refused (or failed) repair. The court mistakenly refused to consider this issue, stating: "Defendants' argument is ultimately a merits discussion, inappropriate for resolution at the class certification stage." Op. 17–18. To the contrary, as demonstrated above, determining whether individual evidence is relevant to an element of liability is precisely what Rule 23 *requires* the court to resolve.

Because it is clear that individual evidence will be required to litigate the express warranty claims, this Court should reverse certification of those claims outright. *See Neale v. Volvo Cars of N. Am., LLC*, 2021 WL 3013009 at *18 (D.N.J. July 15, 2021) (denying certification of express warranty claim); *Galitski v. Samsung Telecom. Am., LLC*, 2015 WL 5319802 at *9 (N.D. Tex. Sept. 11, 2015) (same).

### b.     Breach of implied warranty

Plaintiffs from four States raise claims for breach of implied warranty. Op. 13 (listing California, Connecticut, Massachusetts, and Pennsylvania). The district court concluded that common questions predominate in each claim because "proof related to the existence of the … defect, Nissan's knowledge of the defect, and Nissan's response" will be common. Op. 15. This analysis is replete with errors, and the correct analysis shows individual issues predominate.

First, the sellers' knowledge and response are not elements of an implied warranty claim in any of the certified States, so those issues are irrelevant to assessing whether common questions will predominate over individual questions for those claims.

Second, as Nissan has demonstrated above, the question of defect is not a common question.

Third, claiming that "defect" is the predominant issue for an implied-warranty claims misunderstands the substantive law, which addresses how a product performs, not simply how it is designed.  The warranty of merchantability provides a minimum standard of quality.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009); *Schneider v. BMW of N.Am., LLC*, 2022 WL 1310457 at *11 (D. Mass. April 22, 2022).  An automobile is generally considered merchantable if it provides safe, reliable transportation.  *Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989).  Assessing the merchantability of a vehicle therefore involves examining the safety, reliability, and operability of that vehicle over an extended period of time.  *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 947 (N.D. Cal. 2018).

An alleged defect is not enough, standing alone, to establish that a vehicle is not merchantable.  *See Holman v. Ali Indus., LLC*, 654 F. Supp. 3d 871, 883 (W.D. Mo. 2023) ("[A] defect in a product that makes it less valuable does not necessarily make it unmerchantable."); *Schneider*, 2022 WL 1310457 at * 11 (allegedly defective valve seals did not interfere with vehicle's safety or drivability and thus did not create fact issue on

merchantability); *Cavanaugh v. Subaru of America, Inc.*, 2017 WL 2293124 at *4 (Conn. Super. May 4, 2017) (oil consumption defect did not breach implied warranty where the vehicles actually provided safe and reliable transportation). Even the need to repair a vehicle does not necessarily mean that it is unmerchantable. *See Treuhaft v. Mercedes-Benz USA, LLC*, 2021 WL 2864877 at *4 (C.D. Cal. July 6, 2021) (vehicle taken in for repair eight times over two-year period merchantable where the repairs restored vehicle to working order). In fact, several courts have held that a substantial period of trouble-free use establishes that a vehicle is merchantable *as a matter of law. See, e.g., Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908 at *5 (D.N.J. June 3, 2008); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 at *1 (S.D.N.Y. Dec. 16, 2011); *Ford Motor Co. v. Fairley*, 386 So. 2d 216, 217 (Miss. 1981).

Further, for goods with a limited expected life, like automobiles, an implied warranty claimant must generally show that a defect "manifested." If a defect does not manifest, the buyer has sustained no loss of bargain, having received all that he has the right to expect by way of performance. *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Pracs. and Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1158–59 (C.D. Cal. 2013); *In re Canon Cameras Litig.*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006); *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp.3d 372, 439 (S.D.N.Y. 2017) (Pennsylvania law). At minimum, a claimant must show that manifestation is inevitable during the product's expected useful life. *American Honda Motor Co., Inc. v. Superior Court*, 199 Cal. App. 4th 1367, 1375 (2011); *Rule v. Fort Dodge Animal Health*, 604 F. Supp. 2d 288, 296 (D. Mass.

2009).  Since manifestation bears upon predominance a district court must assess the issue's impact in determining predominance.  *Tershakovec v. Ford Motor Co, Inc.*, 79 F.4th 1299, 1315 (11th Cir. 2023).

Here, no evidence shows that every vehicle either has experienced or will experience unwarranted alerts or braking.  To the contrary, less than 3% of 2017–2018 Rogue and Rogue Sport owners (and only a fraction of 1% of later model years) made a warranty claim for a potential AEB issue.  Plaintiffs' own experiences demonstrate that occurrences are rare, largely confined to certain predictable locations, and easily overridden by the driver.  Opp., R.264, PageID#6130–36.  Certainly, no evidence shows that every vehicle in the classes was unfit to provide safe, reliable transportation.

Proving that a class vehicle was made unfit to provide safe, reliable transaction thus requires individual proof.  While Nissan contends that all the Plaintiffs' vehicles were merchantable, the key point at class certification is that the trier of fact could reach different conclusions as to different vehicles based on their particular history.  Because this is clear as a matter of law on the factual record, this Court should outright reverse certification of the implied warranty claims.

### c.    Common law fraudulent concealment.

Plaintiffs in all ten States allege claims of fraudulent concealment.  Op. 19–20. In each State, the elements of the claims raise predominating individual questions— most notably, reliance and materiality.

37

Courts widely agree that, when a claim requires proof of actual reliance, reliance presents a predominating individual question that precludes class certification. *See, e.g.*, *Sprague*, 133 F.3d at 398 (holding that a claim is not "susceptible to class-wide treatment" when it requires proof that "the person justifiably relied on the statements to his detriment"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (10th Cir. 2023); *Hale v. Enerco Grp.*, 288 F.R.D. 139, 147–48 (N.D. Ohio 2012) (collecting cases).

The district court generically assumed reliance could be presumed under every State's law if a "reasonable person" or "reasonable consumer" would consider the information at issue to be material. Op. 22. This was a legal error because almost all of the States at issue have expressly ***rejected*** presumed reliance for common law fraud claims. *See Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 326 (D. Mass. 2009); *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125, 192–93 (E.D. Pa. 2017); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019); *Rusche v. Clampitt*, 2010 WL 148727, at *5 (S.D. Fla. Jan. 12, 2010); *Ibe v. Jones*, 836 F.3d 516, 532 (5th Cir. 2016) (Texas law); *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 555–56 (W.D. Mo. 2014).

The district court did not address the law Nissan cited from those States. Instead, it cited only one district court case from one State not involved in this case: *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 115 (E.D. Mich. 2019), *clarified on denial of reconsideration*, 340 F.R.D. 251 (E.D. Mich. 2022). That case does not establish presumed reliance even for Michigan, much less for the states relevant here.

The Eleventh Circuit recently reversed class certification when the district court erroneously assumed reliance could be presumed without applying the implicated states' specific laws. *See Tershakovec*, 79 F.4th at 1315. This Court should do the same.

Here, the district court made another error in basing its conclusion that presumed reliance was permissible on the unsupported statement that "the nature of the alleged misrepresentation or omission is essentially the same in all instances: that the AEB system was free of defect." Op. 22. This inaccurate and impermissible generality is contradicted by the record. Nissan never represented that its vehicles were "free of defect." To the contrary, its written repair warranty provides notice that defects may exist. *See, e.g., Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (nothing in repair warranty promised that the product would be defect-free). Regarding AEB systems, Nissan made no representations that an unwarranted activation could never occur. To the contrary, Nissan specifically disclosed the AEB systems might provide alerts and apply braking without a true emergency.

Even for the types of claims that allow reliance to be presumed, a uniform presumption requires a uniformly material misrepresented fact. When materiality is not uniform, the presumption of reliance cannot be invoked. *Stearns v. Ticketmaster*, 655 F.3d 1013, 1022–23 (9th Cir. 2011) (California statutory law); *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009). As this Court recognized in *Ford*, materiality may not be uniform where changes in the product over time affected its performance. 86 F.4th at 728.

39

And notwithstanding any presumption that could be applied to a particular cause of action, reliance is *still* an individual issue because the presumption "may be rebutted by evidence that even if the material facts had been disclosed, plaintiffs' decision to enter into the transaction would have been the same." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 76 (S.D.N.Y. 2015) (federal securities law). The record here shows that Nissan could likely rebut reliance for many class members. While the named Plaintiffs in this case claim to care more about the AEB systems annoying them with unnecessary alerts and braking than about those systems being available to help drivers prevent accidents and save lives, many consumers feel otherwise, valuing AEB's benefits more than its annoyances. Prowse Rpt., R.261-4, PageID#5209 (Consumer Reports reporting it has "heard from thousands who have had [AEB systems] prevent a crash," and also reporting drivers "[are] willing to put up with a few false alerts to get the greater safety benefit"). For every consumer who testifies this way, Nissan will prevail as a matter of law. And because Nissan can win the claim with individual evidence, reliance presents an individual issue that precludes class certification.

Beyond reliance, some states' common law fraud claims contain elements that raise even more individual issues. New York, for example, imposes a duty to disclose based on superior knowledge only when the seller "knows that the other is acting on the basis of mistaken knowledge." *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 900 (E.D.N.Y. 2018). This requirement unavoidably requires individual proof.

For all these reasons, the common law fraud claims cannot satisfy Rule 23(b)(3)'s predominance requirement, and class certification of them must be reversed.

### d.    State consumer protection statutes

Plaintiffs in eight states allege claims under California, Florida, Illinois, Massachusetts, Missouri, New York, Ohio, and Pennsylvania statutes.  Cal. Civ. Code § 1750, *et seq.*; Cal. Bus. & Prof. Code, § 17200; Fla. Stat. §§ 502.201, *et seq.*; 815 Ill. Comp. Stat. 505/1, *et seq.*; Mass Gen. Laws ch. 93A, §§ 1, *et seq.*; Mo. Rev. Stat. §§ 407.010, *et seq.*; New York GBL §§ 349, 350; Ohio Rev. Code Ann. §§ 1345.01, *et seq.*; 73 P.S. 201-1, *et seq.*

The district court did not separately analyze the state statutory claims and instead simply stated that "the elements under these statutory schemes materially mirror the fraud claims." Op. 23.  To the extent that were true, individual questions predominate in those claims for the same reasons Nissan has demonstrated for common law fraud. But the statutes in each State are not all materially the same as the common law in that State.  As Nissan showed, each statute contains elements that raise individual questions on the facts of this case.  Opp., R.265, PageID#6206–13.

For example, the Illinois Consumer Fraud Act requires proof of actual deception based upon a particular communication, not mere non-disclosure.  "The basic principle … is that to maintain an action under [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *De Bouse v. Bayer*, 922 N.E. 2d 309, 316 (Ill. 2009); *see also O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719 (N.D.

Ill. 2020) (holding that under ICFA, omission must stem from particular communication, not a general failure to disclose). A plaintiff must show that "each and every consumer who seeks redress actually saw and was deceived by the statements in question." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 927 (Ill. 2007).

Pennsylvania has retained an actual reliance requirement for its Unfair Competition Acts and Practices Law. *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 615, 777 A.2d 442 (Pa. 2001). In *Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002), the court rejected a presumption of reliance and held that each claimant had to establish they would have acted differently if the defendant had disclosed the alleged airbag defect. *Id.* at 157–58. Federal decisions have subsequently agreed that Pennsylvania requires proof of actual reliance. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008); *see also Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 60 (S.D.N.Y. 2019) (no presumption of reliance in case alleging defective brake systems.).

In Massachusetts, a consumer must have "been injured by another person's use or employment of [a] deceptive act or practice." *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 885 (Mass. 2008) (citing G.L. c. 93A, § 9). Proving "defectiveness" is not enough; proof of personal injury, property damage, or the violation of a government safety standard is required. *Id.* at 882–83. Since no government safety standard is at issue here, Plaintiffs' claims require individual proof of personal injury or property damage.

In short, individual questions will predominate in the state statutory claims. The Court should therefore reverse certification of those claims.

### e. Unjust enrichment

In a cursory two-paragraph analysis, the district court declared common questions would predominate because unjust enrichment "follows the same essential formula in all states" and "the pattern of each transaction is the same: plaintiff purchased or leased a class vehicle from Nissan or an authorized dealer and each plaintiff received the same warranty." Op. 18. Again, the district court failed to conduct the required analysis, and the correct analysis reveals predominating individual questions.

To begin, the district court erred in stating that Nissan or its authorized dealers were part of every transaction. The certified classes cover *all* purchasers and lessees, including people who bought from third parties, not just those who bought and leased directly from Nissan dealers (Nissan does not sell directly to consumers). The difference is material to the claim. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D. Md. 2011) (dismissing unjust enrichment claims of Florida and Pennsylvania used car purchasers); *Hall v. General Motors, LLC*, 2020 WL 1285636, at *10 (E.D. Mich. Mar. 18, 2020) (dismissing unjust enrichment claims of used car buyers under California law).

In addition, unjust enrichment claims are highly individualized because they are equitable claims that require considering the whole context surrounding the transaction.

43

Determining whether Nissan was unjustly enriched by a sale or lease requires "consideration of both plaintiff's and defendant's conduct, as well as the factual context." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194 (D.D.C. 2019) (California, Connecticut, Illinois, Maryland, Missouri, and Pennsylvania law). "Even when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, *as between the two persons*, it is unjust for him to retain it." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (Cal. 1996). "A defendant is only unjustly enriched if a plaintiff does not receive the benefit of the bargain for which he or she paid. Logic compels an inquiry as to what exactly was the benefit of the bargain in a given transaction." *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2018 WL 497071, at * 5 (D.N.J. Jan. 22, 2018) (New Jersey law). Consequently, "common questions will rarely, if ever, predominate [in] an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

Every difference Nissan described above in discussing the other claims is material to unjust enrichment. Differences in AEB system design and performance, in Nissan's knowledge, and in buyers' reliance all matter to the equitable balancing required to decide unjust enrichment, and they all create individual questions. Because this is clear as a matter of law on the record, this Court should reverse certification of the unjust enrichment claims.

\*     \*     \*

44

In conclusion, the record shows that there is no way to resolve Plaintiffs' claims in a common trial that is "both practicable and protective of the parties' rights." *Bais Yaakov*, 12 F.4th at 88. "[A]dd[ing] up all" the individual liability issues, they clearly predominate over any common issues that may exist. *Fox*, 67 F.4th at 300. This Court should therefore reverse the order certifying the classes and remand for individual litigation. At a minimum, the Court should vacate the order and remand with instructions to perform the predominance analysis required by *Fox* and this Court's other cases.

## D. As Part of the Required Rigorous Analysis, a District Court Must Resolve Rule 702 Challenges to Expert Testimony That Bear on Class Certification Before Applying Rule 23.

There is an important undecided issue in this Circuit: When expert evidence bears on the existence or predominance of common issues under Rule 23(a)(2) and (b)(3), must the court resolve challenges to that evidence's admissibility under Federal Rule of Evidence 702 before applying Rule 23? This Court has repeatedly acknowledged a circuit split on the question. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 465 (6th Cir. 2020); *In re Kondash*, No. 20-304, Dkt. 12 at 2–3 (6th Cir. Mar. 11, 2021); *In re Carpenter Co.*, 2014 WL 12809636, at *3 (6th Cir. Sept. 29, 2014); c*f. Lyngaas v. Ag*, 992 F.3d 412, 430 (6th Cir. 2021) (expressly reserving the issue of expert testimony). The majority of circuit courts addressing the question have held that district courts must evaluate expert testimony at the certification stage with the same rigor as at the trial stage.

If the Court decides to remand, the issue is squarely presented. Plaintiffs offered testimony from Loudon to claim that the question of defect presents a common question across all models, model years, and software versions. Class Cert. Mem., R.242, PageID#3094, 3097. Plaintiffs offered testimony from Gaskin and Weir to assert that damages are common and susceptible to "formulaic calculation." Nissan challenged the admissibility of both sets of expert testimony. In guiding the district court on remand, the Court should adopt the majority rule and hold that expert testimony cannot be considered in determining whether Rule 23 is met unless it is admissible under Rule 702.

### 1.    Supreme Court precedent supports resolving challenges.

The majority rule flows naturally from Supreme Court precedent. Although the Supreme Court has not definitively resolved the question, *see Comcast*, 569 U.S. at 33 (Ginsburg, J., dissenting), it has openly expressed "doubt" that "*Daubert* [does] not apply to expert testimony at the certification stage." *Dukes*, 564 U.S. at 354. And three key aspects of the rigorous analysis it has required compel the conclusion that Rule 702 *does* apply at class certification.

First, the party seeking certification must satisfy the provisions of Rule 23(b) "through evidentiary proof." *Comcast*, 569 U.S. at 33. To put the matter plainly, an evidentiary burden cannot be met with expert testimony that cannot be admitted into evidence. Indeed, relying on unchecked expert testimony is no better than relying on

the allegations that undergird any complaint.  Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 125–26 (2009).

Second, the requirement that common questions "generate common answers apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, forces courts to consider how the plaintiffs' claims will be presented at trial.  *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020).  At trial, expert testimony that does not satisfy Rule 702 cannot generate common answers driving the resolution of the litigation because that testimony will be excluded from evidence.  The jury will never hear it, so class members will "be left in the same position as if the expert had never been retained—that is, needing to prove their claims on an individualized basis."  Br. for Pet. at 39, *Comcast*, 569 U.S. 27.  Since inadmissible expert evidence plays no role at trial, it logically can play no role at class certification.

Third, the general command that district courts must resolve disputes relevant to class certification even if they "overlap with the merits," *Dukes*, 564 U.S. at 351, naturally includes resolving any "[t]ough questions" posed by expert admissibility.  *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).  If, for example, plaintiffs rely on expert testimony to show an alleged common defect and defendants challenge the testimony's admissibility, the district court must resolve the dispute because it is relevant to class certification, even though the testimony is also relevant to the merits. *Sher v. Raytheon Co.*, 419 F. App'x 887 (11th Cir. 2011).

47

2.    **The text of the relevant rules supports resolving challenges.**

The text of the relevant rules—Rule 23 and Federal Rule of Evidence 1101—also indicates that Rule 702 challenges must be resolved at class certification.

The textual analysis begins with Evidence Rule 1101. That Rule "set[s] out" the "specific courts and proceedings to which the rules [of evidence] apply, along with exceptions." Fed. R. Evid. 101. "These rules apply to proceedings before . . . United States district courts" in "civil cases and proceedings," Fed. R. Evid. 1101(a), (b). "That means all civil cases and proceedings unless an exception applies." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 905 (3d Cir. 2022) (Porter, J., concurring).

Rule 1101 also sets out the "stages of a case or proceeding" to which the Rules of Evidence apply. Fed. R. Evid. 1101(c). It distinguishes between "rules on privilege," applying "to all stages of a case or proceeding," and all other rules, which apply unless a listed "[e]xception[]" says otherwise. Fed. R. Evid. 1101(c), (d). Those exceptions include only (1) a preliminary question of fact governing admissibility," (2) "grand-jury proceedings," and (3) "miscellaneous" criminal proceedings. Rule 1101(d). Class certification is ***not*** excepted from the Rules of Evidence. *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) (en banc) (the Rules of Evidence apply to fairness hearings under Rule 23(e)). Rule 702 therefore applies at class certification.

The text of Civil Rule 23 also indicates that Rule 702 applies. Rule 23(b)(3) allows a district court to certify a class if "the court finds that" common questions predominate." The phrase "the court finds" is significant: it does not appear in the

other subdivisions of Rule 23(b). *Id.* (1)–(3). Thus, "[t]he plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005); *accord Comcast*, 569 U.S. at 33.

This fact-finding role necessarily implicates Rule 702, which asks, among other things, whether the expert's testimony is helpful and reliable. Fed. R. Evid. 702. A district court finding facts at the class certification cannot justifiably rely on expert testimony that cannot be admitted at trial. "[It is] counterintuitive to allow district courts to utilize inadmissible expert testimony to resolve factual disputes at the class certification stage . . . [because] [t]he purpose of conducting a [Rule 702] inquiry is to ensure the relevance and reliability of expert testimony." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) (Gruender, J., dissenting).

The history of Rule 23 also supports resolving expert issues at certification. Before 2003, the Rule stated that certification orders "may be conditional." Fed. R. Civ. P. 23, 2000 ed. The Judicial Conference deleted this option and explained "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23(c)(1), advisory committee note to 2003 amendment. Putting off Rule 702 issues until trial amounts to an impermissible "conditional" certification.

49

### 3.    The most well-reasoned decisions from other circuits support resolving challenges.

For these reasons, the majority of circuits addressing the issue have held that Rule 702 disputes that will affect class certification must be decided at class certification. The Seventh Circuit was first out of the gate.  In *American Honda*, it held that a "district court must perform a full *Daubert* analysis before certifying the class" "when an expert's report or testimony is critical to class certification."  600 F.3d at 816.  The court reasoned that a district court must make "the necessary factual and legal inquiries and decide all relevant contested issues prior to certification."  *Id.* at 817 (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (cited favorably in *Dukes*, 564 U.S. at 351)).  Adopting a lower standard would amount to a "delegation of judicial power to the plaintiffs, who [could] obtain class certification just by hiring a competent expert."  *Am. Honda*, 600 F.3d at 816.

The Third Circuit agrees.  In *Blood Reagents Antitrust Litigation*, it held that "[e]xpert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact,' nor can it establish 'through evidentiary proof' that Rule 23(b) is satisfied."  783 F.3d 183, 187 (3d Cir. 2015) (quoting *Comcast*, 569 U.S. at 33).

The Fifth Circuit also agrees.  In *Prantil*, it held that "if an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class."  *Prantil*, 986 F.3d 570, 576 (5th Cir. 2021).

Two Circuits have held that conducting a full Rule 702 analysis at the certification stage is unnecessary, but the Court should not follow either of them here. In *Zurn Pex*, the Eighth Circuit took a middle-ground position. 644 F.3d 604. It ruled that district courts need not conduct a "full and conclusive *Daubert* inquiry" and may opt for a "focused" Rule 702 inquiry because class certification is "inherently tentative." *Id.* at 613 (*quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)). But as Judge Gruender persuasively explained in dissent, this reasoning conflicts with the Rule 23 amendment that bars courts from granting conditional certification. *Id.* at 628 (Gruender, J., dissenting). Furthermore, just as inadmissible, unreliable expert testimony cannot be used to resolve factual issues at trial, it cannot be used to resolve factual issues at certification. *Id.* at 629. This Court should follow Judge Gruender's persuasive dissent, not the mistaken Eighth Circuit majority.

This Court should also reject the Ninth Circuit's position that "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage," but "admissibility must not be dispositive." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). The Ninth Circuit analogized a certification decision to a decision on standing and invoked *Lujan*'s statement that standing must be proved "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). This reasoning begs the question of what manner and degree of evidence is required at class certification. Moreover, *Dukes* and *Comcast* already address what

51

"manner and degree of evidence" is required at class certification, and those cases are best read as requiring a full Rule 702 analysis. *See Sali v. Corona Reg'l Med. Ctr.*, 907 F.3d 1185, 1190 (9th Cir. 2018) (Bea, J., dissenting from the denial of en banc rehearing); *see also Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 639 (9th Cir. 2010) (Ikuta, J., dissenting), *rev'd*, 564 U.S. 338 (explaining that the principles undergirding *Daubert* are "equally applicable" at the class certification stage).

Moreover, in cases like this one, the considerations that have led the majority of circuits to require performance of a full Rule 702 analysis take on extra force. The federal government charged manufacturers with developing, implementing, and advancing important AEB technology. Nissan answered that call. Plaintiffs should not be allowed to send their occasional dissatisfaction with advanced, evolving driver assist technology "into the stratosphere" of class certification, *In re Delta Air Lines*, 310 F.3d 953, 957 (6th Cir. 2002) (quotation omitted), with no better proof than an expert whose qualifications and methodology are so shabby as to make their testimony inadmissible. *See also Szabo*, 249 F.3d at 675 ("[C]lass certification turns a $200,000 dispute . . . into a $200 million dispute.").

Because Supreme Court precedent, the text of the relevant rules, and the decisions of a majority of the circuits all point in the same direction, this Court should hold that Rule 702 applies with full force at the class certification stage.

## CONCLUSION

The Court should reverse outright the order of the district court certifying ten statewide classes.  At a minimum, the Court should vacate the order and remand for the district court to conduct the required rigorous analysis, including ruling on the Rule 702 challenges to Plaintiffs' experts.

Dated: January 26, 2024          Respectfully submitted,

*s/ Aaron D. Van Oort*
Aaron D. Van Oort
John L. Rockenbach
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000

E. Paul Cauley, Jr.
S. Vance Wittie
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street
Suite 5400
Dallas, TX 75201
(469) 257-2503

Brigid M. Carpenter
BAKER DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37201
(615) 726-7341

*Counsel for Defendants-Appellants Nissan North America, Inc. and Nissan Motor Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 12,909 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using Microsoft Office 365 ProPlus version of Word in 14-point Garamond.

Dated: January 26, 2024

*s/ Aaron D. Van Oort*
Aaron D. Van Oort

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, a copy of the foregoing document was filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will cause a notice of electronic filing to be served on all registered counsel of record.

<em>s/ Aaron D. Van Oort</em>
Aaron D. Van Oort

## DESIGNATION OF DISTRICT COURT DOCUMENTS

Defendants-Appellants Nissan North America, Inc. and Nissan Motor Co., Ltd.,

pursuant to Sixth Circuit Rule 30(g), designate the following filings from the district

court electronic records:

*In Re Nissan North America, Inc. Litigation,*
*Case No. 19-cv-843*

| Date Filed | R. No.; PageID# | Document Description |
|---|---|---|
| 09/24/2019 | R.67; PageID#1–12 | Entry Noting Transfer of Case from the Northern District of California |
| 09/22/2020 | R.148; PageID#473–573 | First Amended Consolidated Class Action Complaint |
| 11/06/2020 | R.156; PageID#612–615 | Motion to Dismiss Portions of Plaintiffs' First Amended Consolidated Class Action Complaint |
| 11/06/2020 | R.157; PageID#616–635 | Memorandum in Support of Motion to Dismiss Portions of Plaintiffs' First Amended Consolidated Class Action Complaint |
| 11/06/2020 | R.158; PageID#636–638 | Motion to Dismiss Portions of Plaintiffs' First Amended Consolidated Class Action Complaint |
| 11/06/2020 | R.159; PageID#639–834 | Memorandum in Support of Motion to Dismiss Portions of Plaintiffs' First Amended Consolidated Class Action |
| 12/04/2020 | R.164; PageID#848–879 | Response in Opposition to Motion to Dismiss Portions of Plaintiffs' First Amended Consolidated Class Action Complaint |
| 12/18/2020 | R.165; PageID#880–896 | Reply Brief in Support of Motions to Dismiss Portions of Plaintiffs First Amended Consolidated Class Action Complaint |

| 04/04/2022 | R.232;<br>PageID#2973–2985 | Joint Motion to Consolidate Cases |
| --- | --- | --- |
| 04/07/2022 | R.233;<br>PageID#2986–2988 | Order Granting Joint Motion for Consolidation |
| 07/15/2022 | R.239;<br>PageID#3011–3018 | Amended Motion to Certify Class |
| 07/15/2022 | R.242;<br>PageID#3083–3134 | Memorandum in Support of Amended Motion to Certify Class |
| 07/15/2022 | R.243;<br>PageID#3135–3370 | Declaration Regarding Memorandum in Support of Amended Motion to Certify Class |
| 07/15/2022 | R.244;<br>PageID#3371–3896 | Additional Attachments to Declaration |
| 07/15/2022 | R.245;<br>PageID#3897–4226 | Exhibits to Declaration |
| 07/15/2022 | R.246;<br>PageID#4227–4451 | Exhibits to Declaration |
| 07/29/2022 | R.247;<br>PageID#4452–4544 | Response to Unopposed Motion to Seal Portions of Plaintiffs' Memorandum of Law in Support of Amended Motion for Class Certification and Exhibits Thereto |
| 09/15/2022 | R.255;<br>PageID#4601–4605 | Motion to Exclude Testimony of Plaintiffs' Experts Steve Gaskin and Colin Weir Pursuant to Federal Rule of Evidence 702 |
| 09/15/2022 | R.256;<br>PageID#4606–4634 | Memorandum in Support of Motion to Exclude Testimony of Plaintiffs' Experts Steve Gaskin and Colin Weir Pursuant to Federal Rule of Evidence 702 |
| 09/15/2022 | R.257;<br>Pageid#4635–4994 | Notice Regarding Motion to Exclude Testimony of Plaintiffs' Experts Steve Gaskin and Colin Weir Pursuant To Federal Rule Of Evidence |
| 09/15/2022 | R.258;<br>PageID#4995–4999 | Motion to Exclude Plaintiffs' Expert Steven Loudon Pursuant to Federal Rule of Evidence 702 |

| 09/15/2022 | R.259;<br>PageID#5000–5020 | Memorandum in Support of Motion to Exclude Plaintiffs' Expert Steven Loudon Pursuant to Federal Rule of Evidence 702 |
|---|---|---|
| 09/15/2022 | R.260;<br>PageID#5021–5079 | Notice of Filing regarding Motion to Exclude Plaintiffs' Expert Steven Loudon Pursuant to Federal Rule of Evidence 702 |
| 09/15/2022 | R.261;<br>PageID#5080–5701 | Declaration of E. Paul Cauley, Jr. |
| 09/15/2022 | R.262;<br>PageID#5702–5868 | Additional Attachments to Declaration of E. Paul Cauley, Jr. |
| 09/15/2022 | R.263;<br>PageID#5869–6110 | Nissan Defendants' Sealed Exhibits |
| 09/15/2022 | R.264;<br>PageID#6111–6167 | Opposition to Amended Motion for Class Certification |
| 09/30/2022 | R.269;<br>PageID#6246–6259 | Memorandum Granting in Part and Denying in Part Motions to Dismiss |
| 09/30/2022 | R.270;<br>PageID#6250 | Order Granting in Part and Denying in Part Motions to Dismiss |
| 11/15/2022 | R.274;<br>PageID#6349–6363 | Plaintiffs' Reply in Support of Amended Motion for Class Certification |
| 11/15/2022 | R.276;<br>PageID#6379–6438 | Declaration in Support of Plaintiffs' Reply Brief in Support of Amended Motion for Class Certification |
| 11/15/2022 | R.277;<br>PageID#6439–6445 | Exhibit to Declaration |
| 11/15/2022 | R.278;<br>PageID#6446–6471 | Response in Opposition Regarding Motion to Exclude Testimony of Plaintiffs' Experts Steve Gaskin and Colin Weir Pursuant to Federal Rule of Evidence 702 |
| 11/15/2022 | R.279;<br>PageID#6472–6688 | Declaration of Benjamin A. Gastel in Support of Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony of Plaintiffs' Experts Steven Gaskin and Colin Weir |

| 11/15/2022 | R.281; PageID#6700–6721 | Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Steven Loudon |
| 12/15/2022 | R.294; PageID#6890–6899 | Reply to Response to Motion to Exclude Plaintiffs' Expert Steven Loudon Pursuant to Federal Rule of Evidence 702 |
| 12/15/2022 | R.295; PageID#6900–6913 | Reply to Response to Motion to Exclude Testimony of Plaintiffs' Experts Steve Gaskin and Colin Weir Pursuant to Federal Rule of Evidence 702 |
| | R.298; PageID#6928–6945 | Nissan Defendants' Provisional Sur-Reply in Opposition to Plaintiffs' Amended Motion for Class Certification |
| 03/31/2023 | R.305; PageID#6967–6972 | Order denying motions to seal and motions to exclude testimony |
| 03/31/2023 | R.306; PageID#6973–6997 | Memorandum Opinion of the Court |
| 03/31/2023 | R.307; PageID#6998 | Order Certifying Class |
| 10/24/2023 | R.319; PageID#7164–7167 | Order Granting Permission to Appeal |
| 10/26/2023 | R.322; PageID#7178–7179 | Order Staying Case Pending Sixth Circuit's Ruling |
| 11/01/2023 | R.323; PageID#7180 | Receipt for Notice of Appeal |

*Kemp v. Nissan North America, Inc. et al,*
*Case No. 19-cv-854*

| Date Filed | R. No.; PageID# | Document Description |
| --- | --- | --- |
| 01/28/2020 | R.30; PageID#266–299 | First Amended Complaint |
| 02/27/2020 | R.34; PageID#308–310 | Motion to Dismiss for Failure to State a Claim |

| 02/27/2020 | R.35; PageID#311–325 | Memorandum in support of Motion to Dismiss for Failure to State a Claim |
| 02/27/2020 | R.37; PageID#328–330 | Motion to Dismiss First Amended Class Action Complaint Pursuant to Rules 12(b)(6), 9(b) and 8(a) |
| 02/27/2020 | R.38; PageID#331–374 | Memorandum in Support of Motion to Dismiss First Amended Class Action Complaint Pursuant to Rules 12(b)(6), 9(b) and 8(a) |
| 03/06/2020 | R.45; PageID#481–485 | Motion to Consolidate Cases for Pre-Trial Purposes |
| 03/19/2020 | R.51; PageID#502–526 | Response in Opposition to Motion to Dismiss First Amended Class Action Complaint Pursuant to Rules 12(b)(6), 9(b) and 8(a) |
| 04/02/2020 | R.57; PageID#544–553 | Reply to Response to Motion to Dismiss for Failure to State a Claim |
| 05/06/2020 | R.63; PageID#580–584 | Order Granting Motion to Consolidate Cases for Pre-Trial Purposes |
| 02/16/2022 | R.83; PageID#691–697 | Stipulation That a Single Consolidated Motion for Class Certification Shall Be Filed |
| 10/24/2023 | R.90; PageID#715 | Sixth Circuit Amended Judgment Granting Petition for Permission to Appeal |
| 10/26/2023 | R.91; PageID#716–717 | Order Staying Case Pending Sixth Circuit's Ruling |

*Bereda et al v. Nissan North America, Inc. et al,*
*Case No. 22-cv-98*

| Date Filed | R. No.; PageID# | Document Description |
| --- | --- | --- |
| 02/15/2022 | R.1; PageID#1–54 | Complaint |
| 04/07/2022 | N/A | Text Entry Consolidating Case |
| 04/19/2022 | R.10; PageID#73–170 | Motion to Dismiss Portions of Plaintiffs' Class Action Complaint |

| 04/19/2022 | R.11; PageID#171–183 | Memorandum in Support of Motion to Dismiss Portions of Plaintiffs' Class Action Complaint |
|---|---|---|
| 05/20/2022 | R.14; PageID#188–207 | Response in Opposition to Motion to Dismiss Portions of Plaintiffs' Class Action Complaint |
| 06/09/2022 | R.15; PageID#208–220 | Reply to Response to Motion to Dismiss Portions of Plaintiffs' Class Action Complaint |
| 03/17/2023 | R.16; PageID#221–225 | Memorandum And Order Denying Motion to Dismiss |
| 10/26/2023 | R.23; PageID#270–271 | Order Staying Case Pending Sixth Circuit Ruling |